No. 2-09-0976    Filed:  11-8-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Carroll County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 08--CF--49 |
| CAROL A. NESBITT, | ) ) | Honorable Val Gunnarsson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the opinion of the court:

On August 18, 2009, the trial court granted defendant Carol A. Nesbitt's motion to suppress bank records.  Specifically, defendant had argued that the State violated her right to privacy under article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6) when it procured bank records pertaining to her and her husband, Michael T. Nesbitt, without first obtaining a subpoena. On September 16, 2009, the State filed a notice of appeal and a certificate of impairment, asserting that the suppression substantially impairs its ability to prosecute defendant for theft (720 ILCS 5/16-- 1(a)(2) (West 2008)).  On appeal, the State argues that the court erred in granting the suppression motion because: (1) defendant did not possess a constitutional right to privacy in her bank records; (2) the seizure was reasonable; and (3) the records are admissible pursuant to the inevitable-discovery doctrine.  For the following reasons, we affirm.

I.  BACKGROUND

The relevant facts are undisputed. On August 18, 2008, the State filed against defendant a criminal complaint for theft. On September 30, 2008, via a superseding information, the State charged defendant with theft of property valued at over $10,000. 720 ILCS 5/16--1(a)(2) (West 2008). Specifically, the information charged that, between April 1 and August 7, 2008, "defendant knowingly obtained, by deception, control over property in the Savanna-Thomson State Bank" (the Bank) in the amount of $40,200.

On February 24, 2009, defendant filed a "motion to suppress or motion in limine." The motion asserted that, during the time of the alleged theft, defendant was both a Bank employee and customer; she and Michael held and entrusted to the Bank certain accounts, including a checking account. On January 6, 2009, the State disclosed to defendant approximately 250 pages of financial records, bank account statements, deposit slips, copies of cancelled checks, and other financial records relative to the checking account owned by defendant and Michael and held by the Bank. Defendant asserted that she was not aware of any subpoena issued by the State to the Bank requiring the Bank to produce her confidential records, nor did she or Michael execute releases authorizing the Bank to disclose to the State their bank records. Defendant alleged that, on information and belief, the bank records were provided to the State by the Bank merely at the State's (law enforcement's) request. Plaintiff argued that the Illinois Constitution protects an individual's expectation of privacy in bank records and that the invasion of her privacy warranted suppression of the recovered financial documents.

On May 12, 2009, the court held a hearing on plaintiff's motion. For purposes of the hearing, the State and defendant stipulated:

"[T]hat the records that are the subject of the motion were provided to law enforcement at the request of law enforcement. That those records do indeed constitute the financial and bank records, including account statements and cancelled check information of [defendant] and her husband, and that the State disclosed those and intends to use those in the prosecution of [defendant.]"

The parties further stipulated that defendant did not consent to the production, the State did not obtain a subpoena for the records, and no warrant was issued to authorize the acquisition of the records. The court summarized:

"THE COURT: So then I would--I would conclude from that that apparently a police officer or police officers contacted the Bank and said in so many words 'We would like to have this [defendant's] private financial records now.'

DEFENSE COUNSEL: Yes. Yes, Your Honor.

THE COURT: And they were given?

DEFENSE COUNSEL: Yes, Your Honor.

THE COURT: Okay. State, is that your stipulation?

THE STATE: Yes."

No further evidence was received.

During argument, the State argued that the Illinois Banking Act (Banking Act) (205 ILCS 5/1 et seq. (West 2008)) does not prohibit a bank from disclosing financial information to law enforcement when it reasonably believes that it has been the victim of a crime (205 ILCS 5/48.1(b)(7) (West 2008)) and, therefore, no subpoena or consent for the production was necessary. The court noted that the State did not, in the stipulation or otherwise, present evidence that the Bank

disclosed records because it suspected that it was the victim of a crime. Instead, the State stipulated that the Bank disclosed the records at the request of law enforcement. Nevertheless, on June 9, 2009, the trial court ordered supplemental briefing from the parties regarding the Banking Act's applicability.

On August 18, 2009, the trial court issued a 10-page memorandum opinion ordering suppression of the records. Specifically, the court noted distinctions between: (1) federal and state search and seizure law versus the right to privacy guaranteed by the Illinois Constitution; and (2) the Banking Act's privacy rights versus State action to acquire information protected by the Illinois Constitution. The court found that the Banking Act did not provide an exception allowing the State to obtain defendant's financial records without a subpoena or search warrant. Therefore, the court concluded that suppression was warranted because defendant and Michael's bank records were protected by a constitutional right to privacy and the State's acquisition of those documents without a subpoena or warrant unreasonably violated that right. The State appeals.

## II. ANALYSIS

In reviewing a trial court's ruling on a motion to suppress, we give deference to the trial court's factual findings and review de novo its ultimate conclusion as to whether suppression is warranted. People v. Johnson, 237 Ill. 2d 81, 88-89 (2010).

### A. Right to Privacy in Bank Records

The State argues first that defendant possessed no constitutional right to privacy in her bank records. Referring to People v. Caballes, 221 Ill. 2d 282, 313 (2006), the State notes that our supreme court has reaffirmed its commitment to applying a limited lockstep analysis[1] to interpreting

_____

[1]The Caballes court described as follows the limited lockstep approach to interpreting

the search and seizure provision of article I, section 6, of the Illinois Constitution with its federal counterpart, the fourth amendment to the United States Constitution (U.S. Const. amend. IV). The State argues that, per Caballes, the Supreme Court's holding in United States v. Miller, 425 U.S. 435, 442-43, 48 L. Ed. 2d 71, 78-79, 96 S. Ct. 1619, 1623-24 (1976), which stated that an individual has no legitimate expectation of privacy in, and no fourth amendment protection of, his or her bank records, applies here. The State concludes that, under a limited lockstep approach, Miller's holding regarding the fourth amendment applies to the Illinois Constitution such that article I, section 6, provides no right to privacy in bank records and, accordingly, there was no constitutional violation here. We disagree.

The State correctly reads Caballes as to its reaffirmation of limited lockstep analysis; however, as to whether such analysis is applicable here such that Miller controls, we emphasize that article I, section 6, of our state constitution contains both privacy and search and seizure clauses. Specifically, it provides:

> "The people shall have the right to be secure in their persons, houses, papers, and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall

identical or nearly identical language in this state's and the federal constitutions: "[T]his court will 'look first to the federal constitution, and only if federal law provides no relief turn to the state constitution to determine whether a specific criterion--for example, unique state history or state experience--justifies departure from federal precedent.' " Caballes, 221 Ill. 2d at 309-10, quoting L. Friedman, The Constitutional Value of Dialogue and the New Judicial Federalism, 28 Hastings Const. L.Q. 93, 104 (2000).

issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized." Ill. Const. 1970, art. I, §6.

Caballes applied limited lockstep analysis to the search and seizure provision of our state constitution. Caballes, 221 Ill. 2d at 313. The court further recognized that, in contrast to article I, section 6, of the Illinois Constitution, the fourth amendment to the federal constitution makes no explicit mention of privacy, guaranteeing only the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. According to the court, this distinction reflects that the privacy clause of article I, section 6, expands upon the rights guaranteed by the fourth (and fourteenth) amendment to the federal constitution. Caballes, 221 Ill. 2d at 317 (citing to constitutional comments). Thus, the fact that article I, section 6's search and seizure provision is read in limited lockstep with the fourth amendment to the federal constitution does not require that the privacy clause of our constitution must be interpreted in accordance with federal law. In other words, Caballes does not require application of limited lockstep analysis when determining the parameters of the Illinois Constitution's privacy provision.

Further, as the privacy clause of our state constitution expands upon the protections offered by the federal constitution, it also expands upon the rights guaranteed by our own search and seizure provision. The court in Caballes noted that our constitution's privacy clause provides protection in addition to its search and seizure clause and that it is broadly written, with no definition limiting the types of privacy intended to be protected. Caballes, 221 Ill. 2d at 317. Moreover, the court noted that, when the 1970 constitution was adopted, the privacy clause was added for the purpose of creating an additional right applicable to situations not covered by the search and seizure provision. Caballes, 221 Ill. 2d at 318-19. Therefore, while the two may overlap, whether a search or seizure

violates the privacy clause of article I, section 6, is an inquiry separate and apart from whether it violates that article's search and seizure clause.

Having clarified the distinction between our constitution's privacy and search and seizure provisions, it is clear that the privacy clause of the Illinois Constitution protects an individual's bank records. We disagree with the State that the privacy clause protects electronic and data entry records but not "traditional" records. Preliminarily, we note that, in today's society, banking records and electronic records are not mutually exclusive. Moreover, the court in Caballes, in interpreting the privacy clause and considering the scope of its protection, drew no distinction between the various forms that private records may take, recognizing instead that "[t]he privacy clause is also implicated if, in the course of a criminal investigation, the state seeks access to medical or financial records that are within the scope of the protections of article I, section 6." (Emphasis added.) Caballes, 221 Ill. 2d at 330. The court further noted its prior decision in In re May 1991 Will County Grand Jury, 152 Ill. 2d 381 (1992), where it recognized protection for individual privacy rights in "books and records" and where it held that it is reasonable for an individual to expect that his or her "private records" will not be exposed to public view or that his or her personal characteristics will not be scrutinized absent a valid reason. Caballes, 221 Ill. 2d at 320-21, 330, citing Will County Grand Jury, 152 Ill. 2d at 391-92, 396.

Further, in Will County Grand Jury, our supreme court cited with approval the First District Appellate Court's holding in People v. Jackson, 116 Ill. App. 3d 430, 434-35 (1983), that article I, section 6, ensures a right to privacy in, specifically, "bank records." Will County Grand Jury, 152 Ill. 2d at 396. The court in Jackson, referring to article I, section 6's, privacy clause, explicitly rejected

the argument raised here by the State that the Supreme Court's decision in Miller precludes a finding that our state constitution provides a right to privacy in bank records. The First District explained:

"In reliance upon this express proscription against invasion of privacy in Illinois and influenced by the [1970 Constitutional] Commentary, which suggests that this protection should be broadly applied, we are led to conclude that the Illinois Constitution offers protection for the reasonable expectation of privacy which our citizens have in their bank records.

We believe that it is reasonable for our citizens to expect that their bank records will be protected from disclosure because in the course of bank dealings, a depositor reveals many aspects of her personal affairs, opinion, habit and associations which provide a current biography of her activities. Such a biography should not be subject to an unreasonable seizure by the State government. Furthermore, we reject the idea set out in Miller that a citizen waives any legitimate expectation in her financial records when she resorts to the banking system. Since it is virtually impossible to participate in the economic life of contemporary society without maintaining an account with a bank, opening a bank account is not entirely volitional and should not be seen as conduct which constitutes a waiver of an expectation of privacy." Jackson, 116 Ill. App. 3d at 434-35.

The State urges us to decide differently, noting that our supreme court has not explicitly weighed in on Miller's applicability to our state constitution's privacy provision. However, as previously mentioned, our supreme court has cited Jackson with approval. In addition, this court, in People v. DeLaire, 240 Ill. App. 3d 1012 (1993), cited Will County Grand Jury, 152 Ill. 2d at 390, for the proposition that the Illinois Constitution exceeds the federal constitution's privacy guarantees.

DeLaire, 240 Ill. App. 3d at 1019. Further, we cited with approval Jackson's conclusions that the Illinois Constitution's privacy clause extends protection to bank records and that, because our state constitution provides greater protection for bank records than does the federal constitution, Miller does not control. DeLaire, 240 Ill. App. 3d at 1020. We see no compelling reason to depart from this line of reasoning. Accordingly, we reject the State's argument that there is no right to privacy in bank records under article I, section 6, of the Illinois Constitution.

### B. Reasonableness of the Intrusion

### 1. Banking Act

The State argues next that, even if there is a right to privacy in bank records, its intrusion here was reasonable. "Once the right to privacy under article I, section 6, is established, the court must determine whether the state's invasion of individual privacy is reasonable." Caballes, 221 Ill. 2d at 321; see also Jackson, 116 Ill. App. 3d at 435 (the constitution's protection of privacy in bank records extends only against unreasonable search and seizures, not reasonable ones). The State argues that the language of the Banking Act "was such to lead a reasonable police officer, especially under the circumstances here, to conclude that he might obtain the bank's records by merely asking for them, since this is what the statute says on its face." For two reasons, we disagree. First, there is no evidence in the record to support either that a police officer relied upon the Banking Act to make his or her request of the Bank or that the Bank disclosed the records in reliance upon the Banking Act. Second, we agree with the trial court that the Banking Act in no way provides an exception for State action. We address each in turn.

The Banking Act provides that a customer's financial records are confidential and that bank officers or employees who are convicted of furnishing financial information in violation of the

Banking Act's confidentiality provisions are subject to fines and penalties. 205 ILCS 5/48.1(e), (f) (West 2008). However, the Banking Act provides that bank officers or employees are not prohibited from, for example: (1) "[t]he furnishing of information to the appropriate law enforcement authorities where the bank reasonably believes it has been the victim of a crime" (205 ILCS 5/48.1(b)(7) (West 2008)); (2) "furnishing information under any other statute that by its terms or by regulations promulgated thereunder requires the disclosure of financial records other than by subpoena, summons, warrant, or court order" (205 ILCS 5/48.1(b)(11) (West 2008)); or (3) disclosing financial records under "a lawful subpoena, summons, warrant, *** or court order only after the bank mails a copy of the subpoena, summons, warrant, *** or court order to the person establishing the relationship with the bank *** unless the bank is specifically prohibited" from doing so (205 ILCS 5/48.1(d) (West 2008)).

First, there is no evidence in the record that any of these exceptions applies. At the hearing on the motion to suppress, the State offered <u>no</u> evidence to support any of these exceptions. For example, its stipulation that the Bank provided defendant and her husband's bank records to law enforcement at law enforcement's request did not evince whether a police officer made the request in reliance upon the Banking Act. Further, no evidence was presented regarding whether a bank employee or officer furnished the information because of a belief that the Bank was the victim of a crime. Indeed, the stipulation did not establish that an employee or officer contacted the police out of concern or suspicion that a crime against the Bank was committed; rather, the stipulation reflected only that law enforcement initiated the request and that the Bank complied with that request. At oral argument, the State noted that the record reflects that the assistant State's Attorney disclosed defendant's financial documents to defense counsel upon receiving them. Accordingly, the State

argues that the fact that the case against defendant was pending when the assistant State's Attorney received the documents shows that the Bank disclosed the documents believing that it had been a victim of a crime. We disagree. The timing of when the assistant State's Attorney received the documents does not speak to when law enforcement received them or, more critically, when law enforcement <u>requested</u> them. In other words, law enforcement might have requested the documents before any charges were filed and before the Bank had any suspicions of a crime. The point is that there is no way of knowing what the Bank's employees thought, because the record is silent on these critical facts and their implications. Finally, as to the final two exceptions, the State made no argument below that a statute other than the Banking Act <u>required</u> disclosure of the records, even in the absence of a court order, subpoena, summons, or warrant, and there was obviously none issued here requiring the disclosure.

Second, the State's reliance on the Banking Act as rendering reasonable law enforcement's request for the records is misplaced. The Banking Act provides bank customers with a <u>statutory</u> right to confidentiality and authorizes penalties against financial institutions that violate that right. The Banking Act's penalty exemptions for bank employees who disclose financial information in accordance with one of the foregoing exceptions in no way touches upon an individual's <u>constitutional</u> right to privacy from unreasonable <u>State</u> intrusion.

The distinction between an individual's constitutional protections against State intrusion versus the Banking Act's privacy protections for bank customers was touched upon in <u>Jackson</u>. There, the defendant argued that, because she did not receive proper notice under the Banking Act, she was entitled to suppress a grand jury's subpoena of her bank records. The court disagreed that the Banking Act provided grounds to quash the subpoena, stating:

"The statute by its terms only tries to set out the obligations which a bank owes to its bank customers. These are the obligations of confidentiality and the obligation of notice to a customer if this confidentiality is abridged. The statute does not attempt to regulate governmental intrusion into a customer's confidential bank records." (Emphasis added.) Jackson, 116 Ill. App. 3d at 437.

Thus, we conclude that the trial court correctly determined that the Banking Act did not exempt the State from obtaining during its criminal investigation a subpoena or warrant for defendant's constitutionally protected records.

2. Relationship Between the Parties

Next, we reject the State's argument that the intrusion was reasonable in light of the parties' relationship. The State argues that, while it would have been preferable for law enforcement to obtain a subpoena or warrant, defendant and the Bank, as employer-employee and banker-depositor, shared a "special relationship" that effectively "mute[s] the defendant's privacy concerns." It contends that, due to the nature of the banking system, the Bank was a party to all of defendant's banking transactions and, therefore, her right to privacy, under such circumstances, was illusory. Thus, the State argues that, under these unique and narrow circumstances, the policy concerns that might otherwise accompany a bank turning over records without a warrant or subpoena are not present, and "no true harm has befallen the defendant nor have her constitutional rights truly been violated." We disagree.

To the extent that the State relies on cases addressing diminished reasonable expectations of privacy in work-related situations (e.g., People v. Neal, 109 Ill. 2d 216, 223 (1985)), it incorrectly suggests that an employee's personal bank account falls within the expected purview of one's

employer or, more critically, the State. The issue in this case is not the Bank's search of defendant's immediate work space, her desk, a locker, or perhaps her computer. Rather, the issue here is whether law enforcement may circumvent the need to obtain a subpoena or search warrant for an employee's bank records by merely requesting them directly from the employer financial institution that holds them. We conclude that whether the financial institution that held them was defendant's employer or an entirely different bank does not alter the State's obligations. One does not lose constitutional protections simply because he or she is employed by an entity capable of accessing protected information. In other words, our state's constitutional privacy protection from governmental intrusion into financial records does not evaporate merely because a third party, including an employer, has access to the records. See DeLaire, 240 Ill. App. 3d at 1020 (fact that telephone company has access to telephone records "does not negate persons' expectation of privacy in the telephone records"); see also Jackson, 116 Ill. App. 3d at 434 (noting that "the right to privacy is not waived by placing these records in the hands of a bank. The individual can still legitimately expect that her financial records will not be subject to disclosure"). Thus, the State's argument that defendant's right to privacy was illusory because the Bank was privy to her transactions misses the mark: the question is not whether the Bank intruded into defendant's privacy but whether the State did.

Moreover, we reject the State's assertion that defendant has not "truly" been harmed. As defendant argued below, one example of how defendant was harmed by the State's failure to subpoena the records during its investigation is that defendant was deprived of an opportunity to quash the subpoena. See DeLaire, 240 Ill. App. 3d at 1021 ("the respondent of a subpoena has the opportunity to quash it before complying"). In addition, as previously mentioned, DeLaire and Jackson instruct that the constitutional right to privacy in records such as bank records (Jackson) and telephone records

(DeLaire) reflects recognition that such records reveal highly personal matters such as personal associations and dealings that create a "biography" that should not be subject to unreasonable intrusion. DeLaire, 240 Ill. App. 3d at 1020; Jackson, 116 Ill. App. 3d at 435. Thus, the intrusion is the harm, which is why it must be reasonable.

Finally, the State notes that the courts in Will County Grand Jury and Jackson held that, despite a recognized privacy interest, the respective intrusions were reasonable in light of the relevance of the information sought. Will County Grand Jury, 152 Ill. 2d at 396; Jackson, 116 Ill. App. 3d at 436. But, in both cases (as well as in DeLaire), the courts considered the reasonableness of intrusions that took the forms of subpoenas or search warrants. If this were a case involving an intrusion effected by a subpoena or warrant, we would indeed consider whether the intrusion was reasonable by balancing the public's interest in the information against the individual's need for private security. Jackson, 116 Ill. App. 3d at 435. Here, as we have nothing but a law enforcement request, we find those cases distinguishable. In sum, we cannot conclude that the State's request for documents, failure to obtain a subpoena or warrant, and intrusion on defendant's constitutional right to privacy in her bank records were reasonable.

## C. Inevitable Discovery

Finally, the State argues that application of the inevitable-discovery doctrine warrants reversal of the suppression. According to the State, there is little question that defendant's bank records would have been produced pursuant to a search warrant or subpoena if law enforcement had used those processes. The State argues that the price of exclusion is simply too high "in exchange for an honest mistake by the police that they could get bank records by simply asking for them." The State asserts

that the purpose of the exclusionary rule--deterrence of unprofessional police conduct--is not truly advanced by its application here. Again, we disagree.

Defendant is correct that the State did not advance this argument below. Accordingly, this argument is forfeited. See People v. Holveck, 141 Ill. 2d 84, 98-99 (1990) (finding waived State's attempt to raise inevitable-discovery doctrine for first time on appeal); see also Gallagher v. Lenart, 226 Ill. 2d 208, 229 (2007) (noting the difference between waiver and forfeiture; waiver is the " 'intentional relinquishment of a known right' " (quoting Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 326 (2004)), whereas forfeiture is the " ' "failure to make a timely assertion of that right." ' [Citations]").

Even if it were not forfeited, we would reject the State's inevitable-discovery argument for three reasons. First, one requirement for application of the inevitable-discovery doctrine is that an independent investigation was already in progress when the evidence was unconstitutionally obtained. People v. Alvarado, 268 Ill. App. 3d 459, 470 (1994). Here, unlike in, for example, Alvarado (a case upon which the State relies), there was no testimony that an independent investigation was in progress, or that a subpoena or search warrant had been requested, but that the investigation was stopped because the subject consented to the search. Alvarado, 268 Ill. App. 3d at 470-71. The stipulation provided that there was no consent and that police simply requested the documents from the Bank. Second, we disagree that exclusion is too high a price to pay for the "honest mistake" of the police. As discussed above, there is no evidence in the record to support the assertion that the failure to obtain a subpoena or warrant was due to a mistaken reliance on the Banking Act. Third, we disagree with the State that exclusion here does not deter "unprofessional" police conduct. We expect that exclusion will inform law enforcement that the Banking Act does not permit the State,

during a criminal investigation, to bypass obtaining a subpoena or warrant in acquiring constitutionally protected materials.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Carroll County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.