# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***Hope Clinic for Women, Ltd. v. Adams*, 2011 IL App (1st) 101463**

---

| | |
|---|---|
| Appellate Court Caption | THE HOPE CLINIC FOR WOMEN, LTD.; and ALLISON COWETT, Plaintiffs-Appellants, v. BRENT ADAMS, Acting Secretary of the Department of Financial and Professional Regulation, in His Official Capacity; DANIEL BLUTHARDT, Director of the Division of Professional Regulation, of the Department of Financial and Professional Regulation, in His Official Capacity; THE ILLINOIS STATE MEDICAL DISCIPLINARY BOARD, Defendants-Appellees. (Stewart Umholtz, the State's Attorney of Tazewell County, Illinois; Edward Deters, the State's Attorney of Effingham County, Illinois, Proposed Intervenors-Appellants). |
| District & No. | First District, Sixth Division<br>Docket Nos. 1–10–1463, 1–10–1576 cons. |
| Filed | June 17, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court reversed the trial court's dismissal of an action challenging the constitutionality of the Parental Notice of Abortion Act on the grounds that plaintiffs' claims that the Act violated the equal protection and due process clauses of the Illinois Constitution were barred by collateral estoppel and that the alleged violation of the Illinois privacy law is coextensive with federal privacy law and federal privacy law would require dismissal, since the federal opinion in *Zbaraz* that allegedly estopped the equal protection and due process claims was not decided on equal protection grounds and dealt with a very narrow question that was not at issue in the instant case, the federal constitution does not have an express privacy clause similar to the provision of the Illinois Constitution and the Illinois privacy law governing the instant case is not in lockstep with its federal counterpart. |

Decision Under Review

Appeal from the Circuit Court of Cook County, No. 09–CH–38661; the Hon. Daniel A. Riley, Judge, presiding.


Judgment

Affirmed.


Counsel on Appeal

Lorie Chaiten, Leah Bartelt, and Krista Stone-Manista, all of Roger Baldwin Foundation of ACLU, Inc., and Kathleen Roach, Rachel Niewoehner, and Greeta Malhorta, all of Sidley Austin LLP, both of Chicago, and Jennifer Dalven and Alexa Kolbi-Molinas, both of ACLU Foundation, of New York, New York, for appellants.

Lisa Madigan, Attorney General, of Chicago (Michael Scodro, Solicitor General, and Jane Elinor Notz and Brett Legner, Assistant Attorneys General, of counsel), for appellees.

Paul Benjamin Linton, of Thomas More Society, of Northbrook, and Thomas Brejcha and Peter Breen, both of Thomas More Society, of Chicago, for intervenors-appellants.


Panel

JUSTICE R. GORDON delivered the judgement of the court, with opinion.
Justice McBride concurred in part and dissented in part, with opinion.
Presiding Justice Garcia specially concurred, with opinion.

**OPINION**

¶ 1    Plaintiffs challenge the constitutionality of the Parental Notice of Abortion Act of 1995 (the Act) (750 ILCS 70/1 *et seq.* (West 2008)), under the Illinois Constitution alone.

¶ 2    In the proceedings below, the trial court entered judgment on the pleadings and dismissed plaintiffs' complaint with prejudice. In this consolidated appeal, plaintiffs appeal the trial court's dismissal, and the proposed intervenors appeal the trial court's denial of their petition to intervene.

¶ 3    The legal issues that we are asked to decide on this appeal are fairly straightforward and simple and do not take us into any political arena. The trial court held that plaintiffs' equal protection and due process claims were barred by collateral estoppel, and that the privacy claim must be dismissed because Illinois privacy law is coextensive with federal privacy law

on this issue and federal privacy law would require dismissal. For the reasons that follow, we conclude, first, plaintiffs' equal protection claim is not barred by collateral estoppel, because the federal opinion which allegedly estopped the claim was not decided on equal protection grounds. *Zbaraz v. Madigan*, 572 F.3d 370 (7th Cir. 2009). Second, plaintiffs' due process claim is not barred by collateral estoppel, because the federal court was presented with only a very narrow question which is not at issue here. *Zbaraz*, 572 F.3d at 373, 376. Third, state and federal constitutional clauses may be considered coextensive when the two clauses are worded the same, but this logic does not apply when the Illinois Constitution of 1970 has an express clause, such as a right to privacy clause, which the federal constitution does not.

¶ 4    Therefore, we reverse the trial court's order dismissing the complaint, we affirm the trial court's denial of the petition to intervene, and we remand for further proceedings consistent with this opinion.

¶ 5                                 BACKGROUND

¶ 6                                I. The Parties

¶ 7                                A. Plaintiffs

¶ 8    The plaintiffs are the Hope Clinic for Women, Ltd. (Hope Clinic), and Dr. Allison Cowett. The Hope Clinic is a licensed private medical clinic located in Granite City, Illinois, that provides reproductive health services, including abortions.

¶ 9    Dr. Cowett is a physician licensed to practice medicine in Illinois, as well as an assistant professor at the University of Illinois at Chicago (UIC) and the director of UIC's Center for Reproductive Health. Dr. Cowett provides a broad range of gynecological and obstetric care, including abortions.

¶ 10    Dr. Cowett, as well as the other physicians who provide medical care at Hope Clinic, are subject to professional discipline and civil penalties for failure to comply with the Act's requirements.

¶ 11                        B. Defendants and Proposed Intervenors

¶ 12    Defendants are sued in their official capacity only. Brent Adams is the Acting Secretary of the Illinois Department of Financial and Professional Regulation (the Department). Daniel Bluthardt is a director of a division within the Department, namely, the Division of Professional Regulation. The third defendant is the Illinois State Medical Disciplinary Board. All defendants are responsible for imposing professional discipline on physicians who fail to comply with the Act's requirements.

¶ 13    The proposed intervenors, like defendants, seek dismissal of plaintiffs' complaint. The two proposed intervenors are Stewart Umholtz, the State's Attorney of Tazewell County, Illinois, and Edward Deters, the State's Attorney of Effingham County, Illinois.

¶ 14                          II. The Act

¶ 15      The Act places on physicians the responsibility of disclosing to a "parent, grandparent, step-parent living in the household, or legal guardian" the fact that his or her minor or incompetent child is seeking an abortion. 750 ILCS 70/10, 15 (West 2008).

¶ 16      If a pregnant minor seeks a physician's help and chooses to continue her pregnancy, no notice is required even when: she has been adjudicated incompetent; complications may endanger her life or health; she is homeless; the resulting child will be severely disabled; or the minor seeks to give the child up for adoption. 750 ILCS 70/15 (West 2008). The Act's stated purpose is to protect the best interests of "immature minors [who] often lack the ability to make fully informed choices that consider both the immediate and long-range consequences." 750 ILCS 70/5 (West 2008) ("Legislative findings and purpose").

¶ 17      Even if the minor seeks to end her pregnancy, no notice is required if the minor has, or has ever had, a husband. 750 ILCS 70/10 (West 2008).

¶ 18      There is no exception for rape or incest, unless it was committed by a parent, guardian, grandparent, or a stepparent living in the household. If the minor is raped by a stepparent, and the minor no longer resides in his household, the parental notice requirements still apply. Also, no exception is provided if the minor's parent or guardian sexually or physically abused someone in the minor's household, other than the minor. 750 ILCS 70/20 (West 2008) (exceptions to notice requirement).

¶ 19      The Act applies both: (1) to minors; and (2) to women who have been adjudicated incompetent and have been appointed a guardian. The Act defines a "minor" as a person, 17 years old or under, who has not been married or declared emancipated. 750 ILCS 70/10 (West 2008).

¶ 20      The Act requires physicians to provide 48-hour actual notice to an adult family member of the intent of the minor or incompetent person to have an abortion. 750 ILCS 70/15 (West 2008). An "adult family member" must be over 21 years old and can be a parent, grandparent, stepparent living in the household or legal guardian. 750 ILCS 70/10 (West 2008).

¶ 21      The Act requires a physician to make "a reasonable effort" to provide actual notice. 750 ILCS 70/15 (West 2008). "Reasonable effort" is not defined. 750 ILCS 70/10 (West 2008). Only after the reasonable effort has failed can the physician turn to constructive notice. 750 ILCS 70/15 (West 2008). The physician must then provide 48-hour constructive notice, which is defined as notice by certified mail to the last known address of the person entitled to notice. 750 ILCS 70/10 (West 2008).

¶ 22      Although the term "reasonable effort" is not defined, a physician may lose his or her license or have it suspended if he or she is found to have "willfully" failed to provide notice. 750 ILCS 70/40 (West 2008). The Act provides that "[a]ny physician who wilfully fails to provide notice as required under this Act before performing an abortion on a minor or an incompetent person shall be referred to the Illinois State Medical Disciplinary Board for action in accordance with Section 22 of the Medical Practice Act of 1987 [225 ILCS 60/22

(West 2008)]."[1] 750 ILCS 70/40(a) (West 2008). The Act also provides physicians with a good-faith defense. 750 ILCS 70/45 (West 2008). If the physician can prove that he or she was acting in good faith when he or she provided notice or relied on an exception in the Act, then he or she cannot be subject to civil or criminal liability or discipline. 750 ILCS 70/45 (West 2008).

¶ 23 The Act defines an abortion as "the use of any instrument, medicine, drug, or any other substance or device to terminate the pregnancy of a woman known to be pregnant." 750 ILCS 70/10 (West 2008). However, the Act places no express obligation on a physician to ascertain whether his or her patient is pregnant, a minor, or an incompetent.

¶ 24 The Act provides exceptions to notice if the physician finds that there is a medical emergency, or if the minor was the victim of sexual abuse, neglect or physical abuse by a parent, guardian, grandparent, or step-parent living in the minor's household. 750 ILCS 70/20 (West 2008).

¶ 25 To obtain the abuse or neglect exception, the minor must declare in writing that she was the victim of abuse or neglect by a parent, guardian, grandparent, or stepparent living in her household. 750 ILCS 70/20 (West 2008). After the minor places her declaration in writing, the physician may delay notifying state authorities, but only until after the abortion is performed. 750 ILCS 70/20 (West 2008). To obtain the medical emergency exception, the physician must certify in writing that immediate action is required to avert the minor's death or a substantial and irreversible bodily impairment. 750 ILCS 70/10, 20 (West 2008).

¶ 26 The Act also permits a minor or incompetent person to file a petition in court seeking waiver of the notice requirements. 750 ILCS 70/25 (West 2008). The Act does not require the contacted physician to notify the minor of this option or of how or where to file. After a minor or incompetent person successfully files a petition in court, the trial court appoints a guardian *ad litem*. 750 ILCS 70/25 (West 2008). The trial court then has 48 hours after the filing to issue a ruling. 750 ILCS 70/25 (West 2008).

¶ 27 III. The Claims in the Complaint and Petition

¶ 28 A. Plaintiffs' Claims

¶ 29 Plaintiffs claimed that the Act violates a number of clauses of the Illinois Constitution. All the clauses are part of article I, which is our state's Bill of Rights. Specifically, the clauses named by plaintiffs were: (1) the privacy clause (Ill. Const. 1970, art. I, § 6); (2) the due process clause (Ill. Const. 1970, art. I, § 2); (3) the equal protection clause (Ill. Const. 1970, art. I, § 2); and (4) the gender equality clause (Ill. Const. 1970, art. I, § 18).

¶ 30 Our due process and equal protection clauses are worded similarly to their federal counterparts. The due process and equal protection section of our Illinois Constitution states

_____

[1]Section 22 provides, in relevant part, that a physician's license to practice medicine may be revoked for a "[w]illful failure to provide notice when notice is required under the Parental Notice of Abortion Act of 1995." 225 ILCS 60/22(A) (40) (West 2008).

in full that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2.

¶ 31　　By contrast, the privacy and gender equality clauses of the Illinois Constitution do not have any explicit counterparts in the federal constitution. Our privacy clause states, in relevant part, that the people of Illinois "shall have the right to be secure in their persons *** against unreasonable *** invasions of privacy." Ill. Const. 1970, art. I, § 6. The gender equality section of our constitution states, in full, that "[t]he equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts." Ill. Const. 1970, art. I, § 18.

¶ 32　　As relief, plaintiffs sought a temporary restraining order, preliminary and injunctive relief, a declaration that the Act is unconstitutional, and such other relief as the court may deem just and proper.

¶ 33　　　　　　　　　　　　B. Intervenors' Claims

¶ 34　　On October 29, 2009, the proposed intervenors filed a petition seeking to intervene. They claimed, first, that they could intervene, "as of right," pursuant to section 2–408(a)(2) of the Code of Civil Procedure (735 ILCS 5/2–408(a)(2) (West 2008)), which authorizes intervention where the representation of existing parties may be inadequate and the intervenors would be bound by any order or judgment in the action. In the alternative, they claimed that they should be allowed to intervene by permission, which permits intervention where the intervenors' claim and the main action have questions of law and fact in common. 735 ILCS 5/2–408(b)(2) (West 2008).

¶ 35　　　　　　　　　　　　IV. Appealed Orders

¶ 36　　　　　　　　　　　　A. By Plaintiffs

¶ 37　　On March 29, 2010, in a 10-page memorandum order, the trial court granted defendants' motion for judgment on the pleadings and dismissed plaintiffs' complaint with prejudice. The trial court also dissolved the temporary restraining order (TRO) that it had previously entered on October 29, 2010. However, the trial court stayed for 60 days both its order and the dissolution of the TRO, in order to allow plaintiffs an opportunity to appeal. On April 28, 2010, the trial court denied plaintiffs' motion to reconsider and to vacate the March 29 judgment. On May 27, 2010, plaintiffs filed a notice appealing the trial court's orders of both March 29 and April 28, 2010.

¶ 38　　In its March 29 written order, the trial court held: "Notwithstanding Plaintiffs' compelling evidence that parental notification of abortion for minors will often expose minors seeking an abortion to increased risks and anxieties, this Court, for the reasons set forth herein is compelled to find the Act is constitutional." The written order also stated that "[t]he court finds that the Act will encumber a minor's choice" and that "this court finds that, for many minor women, disclosure will result in worse results, including physical and emotional abuse."

¶ 39    In open court, the trial court elaborated on its written findings. The trial court found that "the evidence makes it clear that it's likely to cause more harm than good." The trial court also held that "[t]his law recognizes that there does exist a class or group of individuals within our State who are minors and who have become pregnant," and that "[t]he Act discriminates between those minors who elect to give birth and those minors who elect to terminate their pregnancy." The trial court observed that "[m]inors who elect to give birth may do so without any State intervention regarding medical choices or parental notification, including consenting to an adoption." By contrast, "[m]inors who seek an abortion must notify their parents or appear before a judge."

¶ 40    Despite finding that the evidence established that the law caused more harm than good[2] and that the law discriminated against certain minors within a class,[3] the trial court stated that it felt "compelled to find" the law constitutional for the following reasons.

¶ 41    The trial court found, first, that plaintiffs' due process and equal protection claims were barred by prior federal litigation. Second, the trial court held that plaintiffs' privacy claim must be dismissed, because our state's abortion rights are coextensive with federal rights; and because the Illinois Constitution bars only unreasonable invasions of privacy and "there are circumstances" when the Act's burden on a minor's abortion rights would not be unreasonable. Third, the trial court found that plaintiffs' gender equality claim must be dismissed, without applying strict scrutiny review. For these reasons, the trial court granted defendants judgment on the pleadings and dismissed plaintiffs' complaint with prejudice.

¶ 42                                B. By Intervenors

¶ 43    On November 19, 2009, the trial court denied the motion of the proposed intervenors for leave to intervene. On March 15, 2010, the trial court denied their motion to reconsider, but granted them leave to file their brief as an *amicus curiae*. On May 28, 2010, the trial court denied their supplemental motion. The trial court's orders indicated that reasons were provided in open court. On May 28, 2010, the proposed intervenors filed a notice of appeal, appealing from these three orders. In their notice, the intervenors asked this court to grant them leave to appeal and to affirm the dismissal of plaintiffs' action.

¶ 44    On November 19, 2009, the trial court stated its reasons in open court, as follows:
        "I don't find the state's attorneys to be necessary parties to this litigation, and I find

---

[2]The trial court emphasized that it reached its holding "[n]otwithstanding Plaintiff's compelling evidence that parental notification of abortions for minors will often expose minors seeking an abortion to increased risks." The trial court also stated: "this court finds that, for many minor women, disclosure will result in worse results, including physical and emotional abuse."

[3]The trial court agreed with plaintiffs that the Act would have "a purely negative effect on minors seeking abortions who do not desire parental involvement." The trial court stated: "The court finds that the Act will encumber a minor's choice to terminate her pregnancy, and will lead to disclosure of confidential information about her sexual history and reproductive choices to adult members of her immediate family."

that the Attorney General's office is indeed adequate to represent the interests of all the people affected by this litigation ***."

On March 15, 2010, the trial court stated in open court only that it "will not reconsider" allowing the motion to intervene. For the proceedings held on May 28, 2010, no transcript was included in the appellate record.

¶ 45                                    V. Prior Litigation

¶ 46    To provide a context for our opinion today, we provide, first, a description of earlier lawsuits and the events that triggered them. Then we discuss in depth the recent federal opinion which the trial court found to have preclusive effect.

¶ 47                          A. Earlier Acts and Litigation

¶ 48    The Illinois General Assembly passed its first Parental Notice of Abortion Act in 1983. A year later, the federal district court held the 1983 act unconstitutional, because it failed to insure a minor's anonymity and failed to provide for an expedited appeal. *Zbaraz v. Hartigan*, 584 F. Supp. 1452 (N.D. Ill. 1984). In 1985, the Seventh Circuit Court of Appeals affirmed and continued the previously entered injunction. The injunction was continued so that the Illinois Supreme Court could promulgate rules for the judicial bypass procedure which would ensure both expedited appeals and anonymity. *Zbaraz v. Hartigan*, 763 F.2d 1532 (7th Cir. 1985). In 1991, the federal district court held that the rule promulgated by the Illinois Supreme Court was insufficient, and the injunction was continued. *Zbaraz v. Hartigan*, 776 F. Supp. 375 (N.D. Ill. 1991).

¶ 49    In 1995, the Illinois General Assembly repealed the 1983 act and replaced it with the 1995 act, which is the act at issue on this appeal. In response, the plaintiffs in the federal *Zbaraz* litigation amended their complaint to challenge the 1995 act. The parties then agreed to an injunction barring enforcement of the 1995 act, until the Illinois Supreme Court promulgated a new rule to implement the new judicial bypass procedure contained in the 1995 act.

¶ 50    In February 1996, the federal district court entered a permanent injunction because the Illinois Supreme Court announced that it would not promulgate a new rule. However, after 10 years, the Illinois Supreme Court did promulgate the new rule. Supreme Court Rule 303A provided specific rules to implement the judicial bypass procedure of the 1995 act. Ill. S. Ct. R. 303A (eff. Sept. 20, 2006).

¶ 51    In 2008, the federal district court held that, even with the newly promulgated Rule 303A, the 1995 act was still unconstitutional. *Zbaraz v. Madigan*, No. 84 C 771, 2008 U.S. Dist. LEXIS 15559 (N.D. Ill. Feb. 28, 2008). The *Zbaraz* defendants appealed to the Seventh Circuit Court of Appeals which issued the opinion described below.

¶ 52                      B. Recent Seventh Circuit Opinion

¶ 53    Since the trial court in the case at bar found collateral estoppel based on the 2009 opinion of the Seventh Circuit in the *Zbaraz* litigation, we describe it here in depth.

¶ 54    In 2009, the Seventh Circuit Court of Appeals was presented with, what it acknowledged, was a very "narrow" question. *Zbaraz*, 572 F.3d at 373, 387 ("we emphasize again how narrow is the argument the plaintiffs raise here"). The *Zbaraz* plaintiffs presented only a facial challenge to only one section of the Act: the judicial bypass procedure. *Zbaraz*, 572 F.3d at 373. Since the *Zbaraz* plaintiffs brought only a facial challenge to the bypass procedure, the court stated "we express no view as to whether the Illinois notice act would withstand an as-applied challenge by individual women who have attempted to participate in bypass procedures and found them wanting." *Zbaraz*, 572 F.3d at 388.

¶ 55    The sole argument presented by the *Zbaraz* plaintiffs on appeal was found by the Seventh Circuit to be "an excess of ingenuity." *Zbaraz*, 572 F.3d at 383. The *Zbaraz* plaintiffs observed, correctly, that parental notice could be waived if a court found either: (1) that the minor was mature enough to make her own intelligent decision; or (2) that notice would not be in the minor's best interest. 750 ILCS 750 ILCS 70/25 (West 2008). The *Zbaraz* plaintiffs argued that a trial court would consider the minor's best interest only if it had first found that the minor was too immature. If the trial court found the minor to be too immature to consent–the argument went–then the minor could not legally consent. 750 ILCS 70/30 (West 2008) (prohibiting anyone from performing an abortion on a minor without the minor's consent). The *Zbaraz* plaintiffs argued, and the district court agreed, that an immature minor would be left in "a legal limbo" without a mechanism to obtain an abortion, even after the trial court had ruled that it was in her best interests not to seek parental notice. *Zbaraz*, 572 F.3d at 376. The Seventh Circuit rejected this very narrow argument, finding that "[e]ach link in this chain of argument misinterprets the language of the statute." *Zbaraz*, 572 F.3d at 383. This argument is not repeated in the appeal before us.

¶ 56                                    ANALYSIS

¶ 57    In this lawsuit, plaintiffs, who are medical providers, challenged the constitutionality, under the Illinois Constitution alone, of the Act. In the circuit court, plaintiffs' complaint was dismissed with prejudice, and judgment entered on the pleadings for defendants. Also, the motion to intervene by two State's Attorneys from two Illinois counties was denied.

¶ 58    As noted above, the trial court found, first, that plaintiffs' due process and equal protection claims were barred by prior federal litigation. Second, the trial court held that plaintiffs' privacy claim must be dismissed, because our state's abortion rights are coextensive with federal rights; and because the Illinois Constitution bars only unreasonable invasions of privacy and "there are circumstances" when the Act's burden on a minor's abortion rights would not be unreasonable. Third, the trial court found that plaintiffs' gender equality claim must be dismissed, without applying strict scrutiny review. Also, the trial court found that "the Attorney General's office is indeed adequate to represent the interests of all the people affected by this litigation." For these reasons, the trial court granted defendants judgment on the pleadings, dismissed plaintiffs' complaint with prejudice, and denied the motion to intervene.

¶ 59    As we explain below, we affirm the trial court's denial of the petition to intervene and reverse its dismissal of plaintiffs' complaint.

¶ 60                                    I. Standard of Review

¶ 61    There is no dispute among the parties concerning the appropriate standard of review. As we discuss below, we apply a *de novo* standard of review to the trial court's judgment on the pleadings, and an abuse-of-discretion standard to the trial court's denial of the motion to intervene.

¶ 62                          A. Standard: Judgment on the Pleadings

¶ 63    We review *de novo* a trial court's grant of judgment on the pleadings. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010) (citing *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005)). A motion for judgment on the pleadings, as its name implies, is limited to the pleadings. *Pekin*, 237 Ill. 2d at 455 (citing *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 138 (1999)). It is properly granted only if the pleadings disclose no genuine issue of material fact and if the movant is entitled to judgment as a matter of law. *Pekin*, 237 Ill. 2d at 455. When defendants are the movants, the court will consider, as admitted by defendants, all the well-pleaded facts set forth in the complaint and all the reasonable inferences that may be drawn from those facts, as admitted by defendants. *Pekin*, 237 Ill. 2d at 455 (citing *Employers Insurance*, 186 Ill. 2d at 138). When ruling on a motion for judgment on the pleadings, a court may consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record. *Gillen*, 215 Ill. 2d at 385 (citing *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 255 (2001)).

¶ 64                            B. Standard: Motion to Intervene

¶ 65    An appellate court reviews a trial court's decision on a petition to intervene only for an abuse of discretion. *In re Adoption of S.G.*, 401 Ill. App. 3d 775, 784 (2010). "A trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Adoption of S.G.*, 401 Ill. App. 3d at 784.

¶ 66                                    II. Collateral Estoppel

¶ 67    For the reasons discussed below, we hold that the trial court erred in dismissing plaintiffs' equal protection and due process claims.

¶ 68    The trial court decided plaintiffs' equal protection and due process claims solely on collateral estoppel grounds. First, the trial court correctly observed that the issue in this case was "whether the equal protection and due process issues are identical to those litigated in the federal court." Hope Clinic v. Adams, No. 09 CH 38661, order at 4 (Cir. Ct. Cook Co. Mar. 29, 2010). However, to answer that question, the trial court considered only "whether the state constitutional provisions at issue should be analyzed in lockstep with their federal counterparts." Hope Clinic v. Adams, No. 09 CH 38661, order at 4 (Cir. Ct. Cook Co. Mar. 29, 2010). Based solely on its conclusion that the federal and state clauses were

"synonymous," the trial court held that "Plaintiffs' equal protection and due process issues were sufficiently and finally decided in the federal litigation." Hope Clinic v. Adams, No. 09 CH 38661, order at 4 (Cir. Ct. Cook Co. Mar. 29, 2010). However, the trial court did not compare the claims asserted in plaintiffs' complaint to the specific issues actually litigated in the federal suit, in order to determine whether plaintiffs' equal protection and due process issues here had been sufficiently and finally decided in the federal suit.

¶ 69 Whether the doctrine of collateral estoppel applies in a particular case is a question of law that we review *de novo*. *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 158 (2010); *Hurlbert v. Charles*, 238 Ill. 2d 248, 254 (2010). The collateral estoppel doctrine prevents a party from relitigating a specific question or fact that was already decided against it in a prior case. *People v. Jones*, 207 Ill. 2d 122, 138-39 (2003)*; People v. Tenner*, 206 Ill. 2d 381, 396 (2002).

¶ 70 However, "the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to [any] other matters which *might* have been litigated and determined." (Emphasis in original.) *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001) (citing *Housing Authority for La Salle County v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 252 (1984)). "Application of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment." *Nowak*, 197 Ill. 2d at 390-91 (citing *Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 467 (1996)).

¶ 71 The parties seeking to invoke the doctrine–in this case, defendants–have the burden of meeting three requirements. *Jones*, 207 Ill. 2d at 139. But, these three requirements are merely a "minimum threshold." *Nowak*, 197 Ill. 2d at 391. Since collateral estoppel is an equitable doctrine, a court must still consider the equities of applying the doctrine, even after a party has met these requirements. *Nowak*, 197 Ill. 2d at 391. A court must still "balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case." *Nowak*, 197 Ill. 2d at 391.

¶ 72 The three threshold requirements are, first, that the specific issue decided in the prior suit must be identical with the one presented in the current suit. *State Building Venture*, 239 Ill. 2d at 158; *Hurlbert*, 238 Ill. 2d at 255. See also *Jones*, 207 Ill. 2d at 139 ("the same one"). Second, the determination of this issue or fact must have been a critical and necessary part of a final judgment in the prior suit. *Jones*, 207 Ill. 2d at 139. See also *State Building Venture*, 239 Ill. 2d at 158; *Hurlbert*, 238 Ill. 2d at 255. Third, the party against whom estoppel is asserted was a party or in privity with a party to the prior suit. *State Building Venture*, 239 Ill. 2d at 158; *Hurlbert*, 238 Ill. 2d at 255. In the case at bar, defendants failed to meet the first requirement.

¶ 73 The issues here and the issue in the federal suit were not the same. The Seventh Circuit Court of Appeals began its opinion by observing what a narrow question had been presented to it:

> "The question presented here is a narrow one: whether the Illinois Parental Notice of Abortion Act of 1995, 750 ILCS 701 *et seq.*, is facially invalid because its judicial bypass provisions lack language authorizing a state court judge to issue an order

allowing an immature minor to consent to an abortion without notifying her parents, where an abortion without notice would be in her best interests." *Zbaraz*, 572 F.3d at 373.

The Seventh Circuit's narrowness comments served as bookends for its opinion, both opening and closing it. At the close of its opinion, the Seventh Circuit stated: "we emphasize again how narrow is the argument the plaintiffs raise here." *Zbaraz*, 572 F.3d at 387.

¶ 74        The questions presented here differ from the question presented in *Zbaraz* for several reasons.

¶ 75        First, the question presented in *Zbaraz* was narrow. The issue, simply put, was whether the Act was written in such a way as to defeat its own judicial bypass procedure. *Zbaraz*, 572 F.3d at 387 (holding that an act cannot be held to destroy itself). Specifically, the question in *Zbaraz* was whether, even after a court had found that waiving parental consent was warranted, a minor would still be unable to receive an abortion, because she would be too immature to provide the informed consent required by the Act. *Zbaraz*, 572 F.3d at 376. Plaintiffs' only claim was that the Act left a minor in " 'legal limbo,' " and the Seventh Circuit found that it did not. *Zbaraz*, 572 F.3d at 376 (quoting *Zbaraz*, 2008 WL 589028, at *3). By contrast, plaintiffs in the case at bar do not make any such "legal limbo" claims. Thus, the questions presented here differ from the one, narrow question presented and decided in *Zbaraz*. See *Nowak*, 197 Ill. 2d at 394 (prior dismissal by federal court of plaintiff's federal discrimination claim had "nothing to do with" plaintiff's state claim based on "the independent protection" provided by his employment contract).

¶ 76        Second, the *Zbaraz* plaintiffs raised solely "a facial challenge." *Zbaraz*, 572 F.3d at 381. As a result, the Seventh Circuit explicitly left open the question of whether the Act, as applied, was constitutional. The federal appeals court stated, unequivocally: "we express no view as to whether the Illinois notice act would withstand an as-applied challenge." *Zbaraz*, 572 F.3d at 388. The federal appeals court gave examples of what might constitute "compelling evidence" and stated that it "express[ed] no view regarding the availability or likely success of such evidence." *Zbaraz*, 572 F.3d at 382 n.7.[4] In the case at bar, most of the complaint discusses the effects and consequences of the Act, as applied to minors. On this appeal, plaintiffs specifically ask this court to "reverse and remand to the circuit court with instructions, upon proof of the alleged wrongs, [to] award appropriate relief." Plaintiffs argue that the trial court erred in dismissing on the ground that they could not succeed on a facial challenge, where their alleged facts demonstrated "harm in the form of physical and emotional abuse." Since the federal court explicitly left open the possibility that a later suit could submit the proof needed to support "an as-applied challenge," collateral estoppel should not apply here, and dismissal at this early stage is premature.

¶ 77        Third, plaintiffs' equal protection claim was neither litigated nor decided in the federal

---

[4]The federal appeals court provided the following example. "More compelling evidence might have been in the form of, for instance, affidavits from young women establishing that they would not have been able to avail themselves of the bypass procedure without their parents learning of it, such that the bypass offered a *de jure* but not a *de facto* remedy." *Zbaraz*, 572 F.3d at 382 n.7.

suit.[5] Although the federal plaintiffs raised an equal protection claim in their complaint, the Seventh Circuit ruled solely on due process grounds. *Zbaraz*, 572 F.3d at 373 (question concerned the due process of the judicial bypass procedure); see also *Zbaraz*, 572 F.3d at 380 (applying "*Bellotti II*'s criteria"); *Bellotti v. Baird* (*Bellotti II*), 443 U.S. 622, 650 n.30 (1979) (not decided on equal protection grounds). The mere statement of a claim in a complaint is insufficient to create collateral estoppel in a subsequent suit; the claim must have been actually litigated and decided in the first suit to lead to collateral estoppel in the second suit. *Nowak*, 197 Ill. 2d at 390 ("the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined"). Thus, plaintiffs' equal protection claim is not barred by collateral estoppel.

¶ 78    Fourth, even if we were to find that the *Zbaraz* opinion had a preclusive effect on plaintiffs' due process claim, it considered only the judicial bypass procedure. Thus it could not have a preclusive effect on plaintiffs' allegations concerning other parts of the Act.

¶ 79    For these reasons, we reverse the trial court's ruling that collateral estoppel precluded plaintiffs' equal protection and due process claims.

¶ 80                        III. The Illinois Right to Privacy Clause

¶ 81    Plaintiffs' privacy claim implicates two aspects of the Illinois privacy clause: the right to an abortion (*Family Life League v. Department of Public Aid*, 112 Ill. 2d 449, 454 (1986) (the Illinois privacy right "encompasses a woman's decision of whether to terminate her pregnancy")); and the right against state-ordered disclosure of medical information (*Kunkel v. Walton*, 179 Ill. 2d 519, 537 (1997) ("confidentiality of personal medical information is, without question, at the core" of the Illinois privacy right)). The trial court held that plaintiffs' privacy claim must be dismissed because the Illinois abortion right is coextensive with its federal counterpart, and federal law would require dismissal.

¶ 82    While state and federal constitutional clauses may be considered coextensive when the two clauses are worded the same, this logic does not apply when the Illinois Constitution has an express clause, such as a right to privacy clause, which the federal constitution does not. *People v. Caballes*, 221 Ill. 2d 282, 289 (2006) (when a clause is unique to the state constitution, it "must be interpreted without reference to a federal counterpart"); *People v. Nesbitt*, 405 Ill. App. 3d 823, 828 (2010). As a result, we reverse the trial court's order dismissing plaintiffs' privacy claim.

¶ 83                                A. Abortion Right

¶ 84    We agree with much of the trial court's order on this issue. In its order, the trial court observed that our state constitution, unlike its federal counterpart, guarantees its citizens a right against "unreasonable *** invasions of privacy." Ill. Const. 1970, art. I, § 6; *Kunkel v. Walton*, 179 Ill. 2d 519, 537 (1997) ("the right to privacy [is] expressly set forth in our state

---

[5]At the oral argument held in this appeal on April 14, 2011, the parties agreed that the equal protection claim was not decided in the federal litigation.

constitution"). The trial court also observed that our state's privacy right "goes beyond" the liberties guaranteed by the federal bill of rights and that, as a result, our state constitution has not been interpreted in a lockstep manner with the federal constitution on privacy issues. *In re: May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 391 (1992) (the Illinois privacy right "goes beyond Federal constitutional guarantees"). See also *Caballes*, 221 Ill. 2d at 317 (the Illinois Constitution's "additional language" expands upon the rights in the federal constitution); *Kunkel*, 179 Ill. 2d at 537, *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 450 (1997); *King v. Ryan*, 153 Ill. 2d 449, 464 (1992); *Nesbitt*, 405 Ill. App. 3d at 828. Then, quoting our state supreme court, the trial court observed that our state's privacy right includes a woman's decision whether to terminate a pregnancy. "[C]iting the privacy clause, our Supreme Court stated unequivocally that the 'fundamental right of privacy which encompasses a woman's decision of whether to terminate her pregnancy *** was also secured by the drafters of the 1970 Constitution of the State of Illinois.' " Hope Clinic v. Adams, No. 09 CH 38661, order at 6 (Cir. Ct. Cook Co. Mar. 29, 2010) (quoting *Family Life*, 112 Ill. 2d at 454). See also *In re Baby Boy Doe*, 260 Ill. App. 3d 392, 399 (1994) ("The Illinois Supreme Court [in *Family Life*] has acknowledged that the State right of privacy protects substantive fundamental rights, such as the right to reproductive autonomy.").[6] We agree, as we must, with the unequivocal holdings of our supreme court.

¶ 85 However, the trial court found that our supreme court's "statement in *Family Life League* specifically equates the State's abortion right with that found in the 'right of privacy guaranteed by the penumbra of the Bill of Rights of the United States Constitution.' " Hope Clinic v. Adams, No. 09 CH 38661, order at 6 (Cir. Ct. Cook Co. Mar. 29, 2010) (quoting *Family Life*, 112 Ill. 2d at 454). The "statement," to which the trial court referred, is as follows:

> "In *Roe v. Wade*, the Supreme Court first recognized a fundamental constitutional right of privacy which encompasses a woman's decision of whether to terminate her pregnancy. That right of privacy guaranteed by the penumbra of the Bill of Rights of the United States Constitution was also secured by the drafters of the 1970 Constitution of the State of Illinois. Ill. Const. 1970, art. I, secs. 6, 12." *Family Life*, 112 Ill. 2d at 454.

We disagree that the above statement means that the two rights are coextensive. Finding that a woman's right to an abortion is independently "secured" by two different and separate sources is not the same thing as finding that those two sources are completely and totally coextensive. See *Family Life*, 112 Ill. 2d at 454.

¶ 86 The trial court also found that its "reading" of the above statement was buttressed by history. Hope Clinic v. Adams, No. 09 CH 38661, order at 6 (Cir. Ct. Cook Co. Mar. 29, 2010). The trial court stated that, since the drafters of the Illinois Constitution may not have

---

[6]Our supreme court has also held that the constitutional right to privacy encompasses minors as well as adults. *In re Lakisha M*, 227 Ill. 2d 259, 280 (2008) (a minor's " 'zone of privacy' [is] protected by our constitution's privacy clause"); *In re A Minor*, 149 Ill. 2d 247, 256-57 (1992) ("minor victims have a compelling interest in their right to be free from invasions of their privacy").

contemplated that the privacy right would include abortion rights, therefore the state and federal rights are coextensive. But see *Caballes*, 221 Ill. 2d at 317 (" '[n]o definition of types of privacy' intended to be protected 'is offered' " (quoting ILCS Ann., Ill. Const. 1970, art. I, § 6, Constitutional Commentary, at 522 (Smith-Hurd 1993), 318 (chairman of the Bill of Rights Committee evinced a concern with the revelation of " 'bedtime intimacies' " (quoting 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1535)))). This argument, that the drafters may not have contemplated the privacy right to include abortion rights, might be an argument against finding that the privacy right includes abortion rights. But once an abortion right is found in the privacy right, as our supreme court has already done, then we fail to see how this makes the state right coextensive with its federal counterpart.

¶ 87                                    B. Right Against Disclosure of Medical Information

¶ 88        In addition to the abortion right, this case involves the right against state-compelled disclosure of medical information. Our supreme court has held repeatedly that the disclosure of personal medical and financial information implicates the Illinois right to privacy. *Kunkel*, 179 Ill. 2d at 537, 539 (the privacy right is implicated when the statute "provides for state action as the means to compel the disclosure"); *Best*, 179 Ill. 2d at 459; *Caballes*, 221 Ill. 2d at 330; *Nesbitt*, 405 Ill. App. 3d at 833 (the privacy right is implicated by the disclosure of "highly personal matters"). This is yet another example of how our privacy right is not in lockstep with the federal constitution.

¶ 89        A short summary of these cases is useful.[7] In *Kunkel*, the supreme court considered a civil discovery provision that required plaintiffs in personal injury actions to disclose their full medical records to the opposing party. *Kunkel*, 179 Ill. 2d at 523, 526. Our supreme court held that this statutory provision "violates the right to privacy expressly set forth in our state constitution." *Kunkel*, 179 Ill. 2d at 537. In *Best*, our supreme court observed that it had, a month earlier, declared this same discovery provision unconstitutional in *Kunkel*. *Best*, 179 Ill. 2d at 437. However, since both cases were taken under advisement at the same time, the *Best* court explained why it also found this provision to violate Illinois's constitutional privacy rights. *Best*, 179 Ill. 2d at 437-38. In reaching the same conclusion, the *Best* court emphasized the state's "strong public policy in preserving the sanctity of the patient-physician relationship." *Best*, 179 Ill. 2d at 453-54. This sanctity is also at stake in the case at bar.

¶ 90        In *Caballes*, our supreme court described the "zone of personal privacy that the drafters intended to protect" with our state's right of privacy. *Caballes*, 221 Ill. 2d at 331. In *Caballes*, our supreme court was called upon to determine whether a dog sniff of a vehicle constituted an invasion of privacy, and the court held that it did not. *Caballes*, 221 Ill. 2d at 289. The court listed the reasons why a dog sniff failed to qualify as a privacy invasion: a dog sniff "does not reveal private medical information," it "will not reveal the contents of diaries or love letters," and "it will not review sexual orientation or marital infidelity." *Caballes*, 221 Ill. 2d at 330-31. These examples show that the "zone of personal privacy," protected by our

_____

[7]A summary of the *Nesbitt* case appears in the next section of this opinion.

-15-

state right, includes the type of medical and personal information that is at the very heart of the case before us.

¶ 91    In sum, our supreme court has observed "that the Illinois Constitution goes beyond federal constitutional guarantees by expressly recognizing a zone of personal privacy, and that the protection of that privacy is stated broadly and without restrictions." *Kunkel*, 179 Ill. 2d at 537. See also *Nesbitt*, 405 Ill. App. 3d at 828 ("broadly written, with no definition limiting the types of privacy intended to be protected"). Based on this broad and unrestricted guarantee, our supreme court held that "[t]he confidentiality of personal medical information is, without question, at the core" of what Illinois "regards as a fundamental component" of its constitutional privacy right. *Kunkel*, 179 Ill. 2d at 537. This privacy guarantee is necessary because, to be effective as physicians, physicians are, and must be, "privy to the most intimate details of their patients' lives, touching on diverse subjects like *** sexual health and reproductive choice." *Kunkel*, 179 Ill. 2d at 537. Reproductive choice is thus at the core of this right against state-compelled disclosure of medical information.


¶ 92                                C. Not Lockstep

¶ 93    In *Caballes*, the Illinois Supreme Court instructed its lower courts on the correct approach when "considering the relationship, if any, between the meaning of the state constitution and the meaning of the federal constitution." *Caballes*, 221 Ill. 2d at 289. The supreme court said that there were "three possible scenarios." *Caballes*, 221 Ill. 2d at 289. "First, a provision may be unique to the state constitution and, therefore, must be interpreted without reference to a federal [constitution]." *Caballes*, 221 Ill. 2d at 289. Second, a provision may be similar to a provision in the federal constitution, but differ in some significant respect. *Caballes*, 221 Ill. 2d at 289-90. Third, the state provision may be identical or nearly identical to a federal provision. *Caballes*, 221 Ill. 2d at 290.

¶ 94    In *Caballes*, the supreme court was presented with the first and third of these scenarios, namely, the unique state provision and the virtually identical state provision. In *Caballes*, the unique state provision was the same one that confronts us today, namely, the right to privacy; and the virtually identical provision was the search-and-seizure provision, which is not at issue in the case before us. *Caballes*, 221 Ill. 2d at 288.

¶ 95    For the virtually identical search-and-seizure provision, the *Caballes* court adopted what it called a "limited lockstep approach." *Caballes*, 221 Ill. 2d at 309-10. Our supreme court defined this approach as one in which we will look first to the federal constitution, and only if federal law provides no relief, will we determine whether a state departure is warranted based on a specific state criterion. *Caballes*, 221 Ill. 2d at 309-10. Our supreme court provided examples of state criteria, such as: a language difference in our constitution; the debates and committee reports of our constitutional convention; our state tradition; and preexisting state law. *Caballes*, 221 Ill. 2d at 310 (citing *People v. Tisler*, 103 Ill. 2d 226, 245 (1984), and *People v. Krueger*, 175 Ill. 2d 60 (1996)).

¶ 96    However, for the unique right to privacy, our supreme court did not apply this limited lockstep approach. *Caballes*, 221 Ill. 2d at 317-31 (analysis of the state right to privacy). For a provision "unique to the state constitution," the court held that it "must be interpreted

without reference to a federal counterpart." *Caballes*, 221 Ill. 2d at 289. Thus, in the case at bar, the trial court erred when it applied a lockstep approach to our state's privacy right.

¶ 97    The appellate court has previously made this exact same point in *People v. Nesbitt*, 405 Ill. App. 3d 823 (2010), that the limited lockstep approach does not apply to the right of privacy. In *Nesbitt*, the appellate court affirmed the suppression of a criminal defendant's bank records on the ground that the State had violated her right to privacy under the Illinois Constitution by obtaining her bank records without a warrant or subpoena. *Nesbitt*, 405 Ill. App. 3d at 825. The *Nesbitt* court held that, although the limited lockstep doctrine applied to the state's search and seizure clause, the limited lockstep doctrine did not apply when "determining the parameters of the Illinois Constitution's privacy provision." *Nesbitt*, 405 Ill. App. 3d at 828. The appellate court also refused to adopt as a matter of state law the holding of the United States Supreme Court in *United States v. Miller*, 425 U.S. 435, 442-43 (1976), which stated that a person had no legitimate expectation of privacy in his or her bank records. *Nesbitt*, 405 Ill. App. 3d at 827, 830. Similarly, in the case at bar, we are under no obligation to be in lockstep with federal law in deciding this aspect of our state's privacy law.

¶ 98    Discussing *Caballes*, the appellate court held:

> "*Caballes* applied limited lockstep analysis to the search and seizure provision of our state constitution. *Caballes*, 221 Ill. 2d at 313. The court further recognized that, in contrast to article I, section 6, of the Illinois Constitution, the fourth amendment to the federal constitution makes no explicit mention of privacy, guaranteeing only the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' U.S. Const., amend IV. According to the court, this distinction reflects that the privacy clause of article I, section 6, expands upon the rights guaranteed by the fourth (and fourteenth) amendment to the federal constitution. *Caballes*, 221 Ill. 2d at 317 (citing to constitutional comments). Thus, the fact that article I, section 6's search and seizure provision is read in limited lockstep with the fourth amendment to the federal constitution does not require that the privacy clause of our constitution must be interpreted in accordance with federal law. In other words, *Caballes* does not require application of limited lockstep analysis when determining the parameters of the Illinois Constitution's privacy provision." (Emphasis omitted.) *Nesbitt*, 405 Ill. App. 3d at 828.

We see no reason to depart from the sound logic of our own appellate precedent.

¶ 99    For all the above reasons, we reverse the trial court's order finding that the Illinois privacy law governing this case was in lockstep with its federal counterpart.

¶ 100                                   D. Not Reasonable

¶ 101    As an alternative basis for dismissing plaintiffs' privacy claim, the trial court found that the Illinois Constitution provides protection against only unreasonable invasions of privacy, and that the Act's privacy invasions were not unreasonable.

¶ 102                                    1. Reasonableness Test

¶ 103    The Illinois right to privacy differs from the federal right to privacy in that, in Illinois, the governing test is whether the privacy invasion was "reasonable." *Caballes*, 221 Ill. 2d at 321. By contrast, in federal privacy law, the various tests that have been used include the "rational basis" test, the "strict scrutiny" test and the "undue burden" test. For example, all three of these tests were employed in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), when the United States Supreme Court considered a state law requiring a wife to notify her husband of an intended abortion. To strike down the law, four justices applied the undue burden test and one justice applied the strict scrutiny test. *Casey*, 505 U.S. at 876 (undue burden) (O'Connor, J., with Kennedy and Souter, JJ., concurring), 920 (undue burden) (Stevens, J., concurring), 926 (strict scrutiny) (Blackmun, J., concurring). By contrast, the four dissenting justices applied the rational basis test. *Casey*, 505 U.S. at 966 (Rehnquist, C.J., with White, Scalia and Thomas, JJ., dissenting).

¶ 104    We are fortunate in Illinois that we can bypass the confusion about tests apparent in *Casey*, since our constitution provides a qualitative test expressly in the document itself. Since our right to privacy does not come from amorphous "penumbras" (*e.g.*, *Roe v. Wade*, 410 U.S. 113, 152 (finding a privacy right "in the penumbras of the Bill of Rights")), but is instead stated directly in our constitution, we know that our guiding principle is reasonableness. Ill. Const. 1970, art. I, § 6 (prohibiting only "unreasonable" invasions of privacy).

¶ 105    As a result, Illinois privacy jurisprudence is generally not phrased in terms of "a rational basis test," "a strict scrutiny test," or "an undue burden test." Our supreme court has made clear that, once a right to privacy is established under the Illinois Constitution, the sole test for our courts is "whether the state's invasion of individual privacy is reasonable." *Caballes*, 221 Ill. 2d at 321. Even when the answer to that question requires a balancing of the individual's interest against the state's interest, that balancing is generally accomplished without reference to the strict scrutiny test, the rational basis test or the undue burden test. *Caballes*, 221 Ill. 2d at 321 (balancing the individual's interest against the state's interest with a test of reasonableness); *Nesbitt*, 405 Ill. App. 3d at 830 (considering only the "reasonableness" of the state's privacy intrusion); *In re Will County Grand Jury*, 152 Ill. 2d at 392. For example, without discussing strict scrutiny, rational basis or undue burden, our supreme court held that the Illinois right to privacy was violated by a state statute that required unlimited discovery from a personal injury plaintiff. *Kunkel*, 179 Ill. 2d at 537-540; accord *Best*, 179 Ill. 2d at 449-59 (reaching the same result for the same question in a case that was filed nearly at the same time as *Kunkel*); *Family Life League*, 112 Ill. 2d at 456-57 (without discussing strict scrutiny, rational basis or undue burden, our state supreme court held that the Illinois privacy right was not violated by a state statute requiring disclosure of a list of abortion providers); *In re Lakisha M.*, 227 Ill. 2d at 278-80 (without discussing strict scrutiny, rational basis or undue burden, our state supreme court held that the Illinois privacy right was not violated by a state statute requiring DNA extraction from a juvenile offender). In our state, the balancing is done by considering the reasonableness of the invasion, as our constitution expressly requires. Ill. Const. 1970, art. I, § 6.

¶ 106                                    2. Trial Court's Conclusions

¶ 107        In the case at bar, the trial court found that, for many minor women, disclosure will result in physical and emotional abuse, and the Act will thus lead to clear infringements of their constitutional rights. However, without any explanation of what these circumstances were, the trial court also found that "there are circumstances" where disclosure would be reasonable and "that is all that is necessary to defeat" plaintiffs' claim. Hope Clinic v. Adams, No. 09 CH 38661, order at 8 (Cir. Ct. Cook Co. Mar. 29, 2010).

¶ 108        The trial court also did not consider the Act's placement of minor women into categories, subjecting some to privacy invasions and exempting others. *Casey*, 505 U.S. at 896 (finding unconstitutional an act which divided women into categories of married and single, and placed notice requirements only on the former). Minor women who have, or who have ever had a husband, are exempt from this privacy invasion, while the minors who do not have, and who never have had, a husband are not exempt.[8] Minor women who have been raped or subjected to incest by a stepfather are exempt from disclosure only if they remain in his home. Minor women who have watched their siblings be subjected to physical or sexual abuse by the very parent to whom they must disclose information are not exempt from disclosure.

¶ 109        The trial court concluded, without explanation, that the United States Supreme Court had upheld more stringent requirements. Hope Clinic v. Adams, No. 09 CH 38661, order at 8 (Cir. Ct. Cook Co. Mar. 29, 2010). First, every case cited was decided by federal courts interpreting federal law and, as we have already discussed, the Illinois privacy right is not in lockstep with its federal counterpart. Thus, all these cases are distinguishable.

¶ 110        Second, several decisions cited by the trial court found the statutes unconstitutional. *Hodgson v. Minnesota*, 497 U.S. 417, 450 (1990) (finding unconstitutional a two-parent notice requirement); *Bellotti II*, 443 U.S. at 653 (finding unconstitutional a requirement of parental or judicial consent); *Casey*, 505 U.S. at 898 (finding unconstitutional a requirement of spousal notice).[9] For the rest of the decisions cited, either notice was not at issue (*Planned*

_____

[8]Although Illinois requires women under age 18 to obtain parental or judicial consent to marry (750 ILCS 5/203(1), 208 (West 2008)), that is not true for all states and certainly not for all countries. *E.g.* Kerry Abrams, *Immigration Law and the Regulation of Marriage*, 91 Minn. L. Rev. 1625, 1665 n.166 (2007) (some states have differing ages of consent for boys and girls); Michael Mello, *Executing Rapists: A Reluctant Essay on the Ethics of Legal Scholarship*, 4 Wm. & Mary J. of Women & L. 129, 138 (1997) (some states permit women to marry as young as age 15 or 16 without parental consent); Kim Thuy Seelinger, *Forced Marriage and Asylum: Perceiving the Invisible Harm*, 42 Colum. Hum. Rts. L. Rev. 55 (2010) (there is no minimum age of consent to marry in certain Islamic countries). The Act's exemption of married or previously married minors is not limited to jurisdictions where parental or judicial consent was required; thus, prior parental or judicial consent even to marry cannot be presumed.

[9]Although seven justices in *Casey* appeared to agree that a parental consent provision was constitutional, they were unable to agree on an opinion concerning this provision. Thus, it is hard to know what this decision stands for on this issue.

*Parenthood Ass'n of Kansas City, Missouri, Inc. v. Ashcroft*, 462 U.S. 476, 492 n.18 (1983) (no notice provision);[10] *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502 (1990))[11] or there was an exemption which could cover situations involving rape, incest, or physical or sexual abuse in the home (*H.L. v. Matheson*, 450 U.S. 398, 407 n.14 (1981)).

¶ 111    For example, in *H.L.*, 450 U.S. 398, the only issue before the United States Supreme Court was the facial validity of a statute requiring a physician to notify parents, " 'if possible,' " and only: (1) if the girl is living with and dependent on them; (2) if she is not emancipated; (3) if she is not mature enough to make her own medical decisions; and (4) if informing her parents would not pose family conflict. *H.L.*, 450 U.S. at 406-07 (quoting the Utah statute before it). See also *H.L.*, 450 U.S. at 403 n.8 (" 'family conflict over the abortion decision' " not a factor (quoting dissent)); 406 (finding that this statute could be construed "to exempt demonstrably mature minors"). These factors are a far cry from the factors under consideration in our case.

¶ 112    For these reasons, we find that the cases relied on by the trial court are distinguishable and that the Act's placement of women into categories was not considered.


¶ 113                             IV. The Illinois Gender Equality Clause

¶ 114    The trial court decided the gender equality claim without utilizing strict scrutiny review. For the reasons discussed below, we find that strict scrutiny applies to this claim; we reverse the trial court's ruling; and we remand to provide the State an opportunity to satisfy its burden under strict scrutiny review of demonstrating a compelling state purpose.

¶ 115    The gender equality clause states that "[t]he equal protection of the laws shall not be *** abridged on account of sex by the State." Ill. Const. 1970, art. I, § 18. The purpose of the amendment is "to guarantee rights for females equal to those of males." *People v. Ellis*, 57 Ill. 2d 127, 130 (1974); *Teverbaugh v. Moore*, 311 Ill. App. 3d 1, 3 (2000). Like the right to privacy, the gender equality clause has no express counterpart in the federal constitution.

---

[10]In *Ashcroft*, due to "the posture in which [the statute] appears before this Court for review, [the statute] contains no requirement for parental notification." *Ashcroft*, 462 U.S. at 491 n.17. Although the statute did contain a parental consent requirement, it contained an exception if "[t]he minor is emancipated." (Internal quotation marks omitted.) *Ashcroft*, 462 U.S. at 479 n.4 (quoting Mo. Rev. Stat. § 188.028 (2) (Supp. 1982)). This exception differs from the one in the Illinois act, because in the Illinois act the minor must have been already adjudicated emancipated pursuant to the Illinois Emancipation of Minors Act (750 ILCS 30/1 *et seq.* (West 2008)). By contrast, the Missouri statute contained no requirement of prior adjudication and the term "emancipated" was defined broadly by reference to common usage. *Ashcroft*, 462 U.S. at 492 n.18.

[11]The issue before the court in *Akron* with respect to the notice provision was not the disclosure itself, but rather who had to make it. *Akron*, 497 U.S. at 518. The statute in *Akron* required the doctor performing the abortion to be the one who notified the parents. *Akron*, 497 U.S. at 518. On appeal, the only argument that plaintiffs made with respect to the parental notice provision was that another person should also be permitted to make the disclosure to the parents. *Akron*, 497 U.S. at 518-19.

*Ellis*, 57 Ill. 2d at 132 ("In contrast to the Federal Constitution, which, thus far, does not contain the Equal Rights Amendment, the [Illinois] Constitution of 1970 contains section 18 ***."). Based on this fact, our supreme court has found "inescapable the conclusion that it was intended to supplement and expand the guarant[ees] of the equal protection provision of the Bill of Rights." *Ellis*, 57 Ill. 2d at 132.

¶ 116    Unlike the right to privacy, the rational basis and strict scrutiny tests apply to equal protection questions. *E.g.*, *People ex rel. Tucker v. Kotsos*, 68 Ill. 2d 88, 96-97 (1977). After reviewing the gender clause's language and the debates leading to its passage, our supreme court held that "a classification based on sex is a 'suspect classification' which, to be held valid, must withstand 'strict judicial scrutiny.' " *Ellis*, 57 Ill. 2d at 132-33; *Teverbaugh*, 311 Ill. App. 3d at 3-4 (the gender equality clause "designat[es] gender a suspect classification" requiring strict scrutiny); *People v. Lann*, 261 Ill. App. 3d 456, 475 (1994) ("under our State Constitution, gender-based classifications are accorded a higher level of scrutiny"). Under strict scrutiny review, the burden is on the state to show that a distinction is related to some compelling State purpose. *Ellis*, 57 Ill. 2d at 131.

¶ 117    As we already discussed above, when a clause is unique to the state constitution, it "must be interpreted without reference to a federal counterpart." *Caballes*, 221 Ill. 2d at 289. Our supreme court has previously applied the gender equality clause to invalidate distinctions made between minor men and women. *Ellis*, 57 Ill. 2d at 133 (different ages for juvenile offender status); *Phelps v. Bing*, 58 Ill. 2d 32, 35 (1974) (different ages for marriage). While invalidating a law which provided differing ages for juvenile offender status based on gender, our supreme court held that "we find no compelling State interest which justifies treating a 17-year-old boy differently from a 17-year-old girl." *Ellis*, 57 Ill. 2d at 133; *Phelps*, 58 Ill. 2d at 35 ("we do not find[ ] any compelling State interest which justifies treating males and females of the same age differently"). Those words apply with equal force to the case at bar.

¶ 118    In the case at bar, the law discriminates between women and men by permitting a minor male, without notifying his parents, to consent or withhold consent for a surgical procedure for his child, even if that decision might endanger the health or life of that child, while requiring parental notice for a minor woman seeking to abort. Compare Consent by Minors to Medical Procedures Act (410 ILCS 210/1 (West 2008) (minor father "is deemed to have the same legal capacity to act" as an adult)) with Parental Notice of Abortion Act (750 ILCS 70/15 (West 2008)). If a minor male can make a life-endangering decision for his child, then certainly a minor female should be able to make a similar decision for a fetus. If the male's decision does not require parental notification, then requiring parental notification for only the female's decision creates a gender-based distinction.

¶ 119    The Act also distinguishes between women with husbands and single women, and between women who remain with abusive stepfathers and those who do not. These distinctions are based on a woman's connection to a man either through marriage or domicile, and we cannot think of an equivalent that would apply to a minor male.

¶ 120    Applying our supreme court precedent to the facts at bar, we find that the Act results in sex-based distinctions and thus requires strict scrutiny review. We reverse the trial court's ruling and remand for further proceedings consistent with our holding.

¶ 121                                    V. Intervenors

¶ 122      The trial court denied the motion of the proposed intervenors for leave to intervene, on the ground that the Illinois Attorney General's office was adequate to represent their interests. The trial court did grant them leave to file their brief as an *amicus curae*. Both plaintiffs and defendants urge us to affirm the trial court's order. For the reasons stated below, we affirm the trial court's order denying the petition to intervene.

¶ 123      These same two State's Attorneys, Stewart Umholtz and Edward Deters,[12] previously tried to intervene in the federal litigation, and their motion was denied. *Zbaraz*, 572 F.3d at 377. The federal court denied their motion because they failed to allege "any factual or legal distinctions that make their interests divergent" from the existing parties, and because the existing parties could "adequately represent the proposed intervenors' interests." *Zbaraz*, 572 F.3d at 377. The existing parties in the federal case included the state's Attorney General, who is a defendant in this state lawsuit, and the State's Attorney for Cook County. Although the federal holding is not binding on this court, it is instructive.

¶ 124      As we already noted above, an appellate court reviews a trial court's decision on a petition to intervene only for an abuse of discretion. *In re Adoption of S.G.*, 401 Ill. App. 3d at 784. "The decision to allow or deny intervention, whether permissively or as of right, is a matter of sound judicial discretion that will not be reversed absent an abuse of discretion." *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 58 (2002).

¶ 125      In the case at bar, the two State's Attorneys seek to intervene as of right pursuant to section 2–408(a)(2) of the Code of Civil Procedure. This subsection provides that "(a) [u]pon timely application anyone shall be permitted as of right to intervene in an action: *** (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action." 735 ILCS 5/2–408(a)(2) (West 2008).

¶ 126      The plain language of the statute requires the intervenors to prove that the representation of the existing parties may be inadequate. *Argonaut Insurance Co. v. Safway Steel Products, Inc.*, 355 Ill. App. 3d 1, 8 (2004). The two State's Attorneys have failed to show how the representation of the state's Attorney General may be inadequate. Both the State's Attorneys and the state's Attorney General are seeking the same result; they are both acting in their official capacities to represent the people of this state; and they are both sworn to uphold and enforce the laws of this state. *Argonaut*, 355 Ill. App. 3d at 8 (considering whether the intervenors have a divergent interest). No allegation has been made that the Attorney General for the entire state has less adequate resources than the State's Attorneys for two counties. *Argonaut*, 355 Ill. App. 3d at 8 (considering the relative resources and expertise of the intervenors and the existing parties). No allegation has been made that there is something particular about these two counties which would give their State's Attorneys a special and unrepresented interest in the litigation. *Argonaut*, 355 Ill. App. 3d at 8 (considering the

---

[12]In their appellate brief, the intervenors' counsel cites as persuasive authority a book and articles which he wrote.

commonality of the factual claims).

¶ 127     Since the intervenors failed to show either inadequate representation by the existing parties, or a divergent or unrepresented interest, we find that the trial court did not abuse its discretion by denying their motion to intervene as of right.

¶ 128     Alternatively, the intervenors seek to intervene by permission, pursuant to section 2–408(b)(2) of the Code of Civil Procedure. This subsection provides that: "(b) [u]pon timely application anyone may in the discretion of the court be permitted to intervene in an action: *** (2) when an applicant's claim or defense and the main action have a question of law or fact in common." 735 ILCS 5/2–408 (b)(2) (West 2008). This subsection contains no explicit requirement that the proposed intervenor must show inadequate representation. *ABN Ambro Services Co. v. Naperville Park District*, 325 Ill. App. 3d 7, 11 (2001).

¶ 129     We also find that the trial court did not abuse its discretion by denying the motion for permissive intervention. Although an intervenor need not have a direct interest in the pending suit, he or she must have an interest greater than the general public, so that he or she stands to gain or lose by the direct effect of a judgment in the suit. *Birkett*, 202 Ill. 2d at 57-58 (citing *Caterpillar Tractor Co. v. Lenckos*, 84 Ill. 2d 102, 112 (1981)). See also *Maiter v. Chicago Board of Education*, 82 Ill. 2d 373, 382 (1980) ("the applicant must have an enforceable or recognizable right and more than a general interest in the subject matter").

¶ 130     The two State's Attorneys claim that they have an interest, separate and apart, from the general public, in prosecuting possible forgeries of parental consent and in referring professionals who violated the Act to the appropriate disciplinary board. 750 ILCS 70/40 (West 2008).[13] However, this is no more than saying than that they have a duty to enforce the law, whatever it may be, against infractions. Their interest lies in proper enforcement, and none of their claims concern the possible difficulties or problems with enforcing the law. As a result, they have no more interest in the validity of a law passed by the legislature than the ordinary citizen or voter.

¶ 131     Since the proposed intervenors failed to demonstrate either inadequate representation by the state's Attorney General or an interest separate and apart from either the general public or the existing parties, we find that the trial court did not abuse its discretion in denying their motion to intervene.

¶ 132                                    CONCLUSION

¶ 133     For the foregoing reasons, we reverse the trial court's order dismissing the complaint with prejudice; we affirm the trial court's order denying the petition to intervene; and we remand for further proceedings consistent with this opinion.

¶ 134     Affirmed.

---

[13]The penalties provision of the Act provides that any person who fraudulently signs a notice waiver may be prosecuted for a misdemeanor, and that any physician who willfully fails to provide notice shall be referred to the Illinois State Medical Disciplinary Board for disciplinary action. 750 ILCS 70/40 (West 2008).

¶ 135    JUSTICE McBRIDE, concurring in part and dissenting in part.

¶ 136    I concur with the decision to reverse the trial court's dismissal of counts I, II, and III of plaintiffs' verified complaint and I also agree that the trial court properly denied the petition to intervene. However, I dissent from that portion of the opinion that reverses the trial court's dismissal of the gender equality count. I do not believe the allegations accepted as true and authority relied upon by plaintiffs support the contention that the Act violates article I, section 18, of the Illinois Constitution. Accordingly, I would affirm the trial court's dismissal of count IV.

¶ 137    PRESIDING JUSTICE GARCIA, specially concurring:

¶ 138    I agree that the circuit court wrongly granted the defendants' motion to dismiss the complaint with prejudice based on federal case law authority. I do so, however, on substantially narrower grounds than Justice Gordon. In particular, I do not join in the author's suggestion that "the Act's placement of minor women into categories" may render its application unreasonable (*supra* ¶ 108) or that the Act "[improperly] discriminates between men and women" (*supra* ¶ 118). I also conclude that our decision to remand renders moot the appeal of the intervenors, which permits the intervenors to seek intervention once again on remand.

¶ 139    In its memorandum opinion, the circuit court addressed the argument of the defendants that the federal court of appeals' decision in *Zbaraz v. Madigan*, 572 F.3d 370 (7th Cir. 2009), under the doctrines of *res judicata* and collateral estoppel, barred the plaintiffs' claims under the Illinois Constitution. I agree with the circuit court's rejection of the defendants' contention that the plaintiffs "should have raised a state constitutional challenge when they brought the federal litigation" on *res judicata* grounds. The circuit court noted that the eleventh amendment to the federal constitution would have required the "Plaintiffs *** to litigate their claims [under the Illinois Constitution] in state court."

¶ 140    I part company with the circuit court when it adopted the defendants' argument that collateral estoppel applies to bar the state court litigation "because Illinois analyzes constitutional provisions in 'limited lockstep' with the federal courts [and] Plaintiffs' equal protection and due process issues were settled in the federal litigation."[14] *Zbaraz* was issued by an intermediate court of review, much like this court. I am aware of no authority, and the defendants cite none, that holds that the limited lockstep doctrine is triggered whenever an intermediate federal court issues a decision on federal constitutional grounds. Our supreme court has applied the limited lockstep doctrine when it has considered a decision by the United States Supreme Court. See *People v. Tisler*, 103 Ill. 2d 226, 245 (1984) ("Any variance between the Supreme Court's construction of the provisions of the fourth

[14]There is no small amount of irony in the circuit court's rulings to dispense with the defendants' *res judicata* argument that the claims under the Illinois Constitution had to be resolved in state court and the court's acceptance of the defendant's collateral estoppel argument to preclude those same claims in state court.

amendment in the Federal Constitution and similar provisions in the Illinois Constitution must be based on more substantial grounds."). More to the point, the circuit court below provided no analysis that the "limited lockstep" doctrine mandates that an Illinois court follow a federal court of appeals' analysis of claims under the federal constitution to decide issues raised solely under the Illinois Constitution. The limited lockstep doctrine does not compel rote application, but requires due consideration of the interests protected under the Illinois Constitution. See *People v. Caballes*, 221 Ill. 2d 282, 285 (2006) (Even though the search and seizure clauses of the state and federal constitutions are nearly identical, "we must now consider whether, even though the canine sniff *** did not implicate the fourth amendment, it nevertheless violated the guarantees of the state constitution.").

¶ 141    Before an Illinois court is constrained to follow the legal path taken by a lower federal court, it should require the party advocating such a position to demonstrate that the limited lockstep doctrine applies under the particular facts and circumstances presented by the case at hand. This the circuit court failed to do here. Though the outcome in an analysis under the Illinois Constitution may be the same outcome reached in the federal litigation, it is an outcome that requires analysis under Illinois law. *Caballes*, 221 Ill. 2d at 285.

¶ 142    Nor am I certain that the principal issue before us is as the circuit court phrased it: whether "the Illinois Constitution's right to privacy contains its own, distinct right to abortion that is greater than the right contained in the Federal Constitution." The right to privacy under the Illinois Constitution makes no mention of abortion as the landmark decision on abortion by the United States Supreme Court was issued after our constitutional convention was held in 1970. See *Roe v. Wade*, 410 U.S. 113 (1973). I submit the issue for the circuit court to address on remand is whether the right to privacy guaranteed by the state constitution to Illinois citizens is unconstitutionally impinged upon by the Parental Notice of Abortion Act of 1995 (750 ILCS 70/1 *et seq.* (West 2008)). The context is abortion, but the right of privacy under the Illinois Constitution extends beyond that subject.

¶ 143    Nor do I agree that our supreme court's decision in *Caballes* provides an answer to whether the limited lockstep doctrine applies to the express right of privacy, even in the context of abortion. In *Caballes*, our supreme court addressed the issues "whether to abandon or reaffirm the lockstep doctrine and whether the right of privacy guaranteed by the state constitution is implicated by a dog sniff of a car during [the] routine traffic stop." *Caballes*, 221 Ill. 2d at 289. I submit our supreme court was precise about the constitutional issue before it, with due regard to the facts, in order to ensure its holding would be precise as well, which limits its holding in matters outside the context of search and seizure.

¶ 144    In *Caballes*, our supreme court acknowledged that a state court is "free to construe its own constitution as providing greater protection than comparable provisions in the federal constitution." *Caballes*, 221 Ill. 2d at 298-99 (quoting the holding in *People v. Mitchell*, 165 Ill. 2d 211, 217-22 (1995)). Our supreme court has "departed from strict lockstep interpretations when circumstances warrant." *Caballes*, 221 Ill. 2d at 299. Or when a decision by the United States Supreme Court "diminished the protections previously provided" under an express constitutional provision. *Caballes*, 221 Ill. 2d at 300. Or when "state due process concerns" are involved. *Caballes*, 221 Ill. 2d at 301 (citing *People v. McCauley*, 163 Ill. 2d 414 (1994) and *People v. Washington*, 171 Ill. 2d 475 (1996)). In the

context of Illinois' long-arm statute, our supreme court has made clear that state due process concerns may go beyond federal due process guarantees. "The Illinois Constitution contains its own guarantee of due process to all persons (Ill. Const. 1970, art. I, §2), a guarantee which stands separate and independent from the Federal guarantee of due process. While this court may, in construing the Illinois Constitution's guarantee of due process, look for guidance and inspiration to constructions of the Federal due process clause by the Federal courts, the final conclusions on how the due process guarantee of the Illinois Constitution should be construed are for this court to draw." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990).

¶ 145       I conclude it is much too early in the legal process of this case to address whether there is good reason for a "departure from federal precedent" under the "approaches" discussed by our supreme court in *Caballes*. (Internal quotations omitted.) *Caballes*, 221 Ill. 2d at 306-09. Our review of the adequacy of the state based claims in the plaintiffs' complaint should wait until we have a decision by the circuit court, assisted by the parties, based on Illinois law. I can only conclude that when the circuit court below stated it was "compelled to find the Act is Constitutional," it did so because the federal court of appeals said the Act passed federal constitutional muster. To be clear, I do not intimate that a different outcome should prevail under the Illinois Constitution. I contend only that when a claim is made exclusively under the Illinois Constitution, we should analyze those claims under Illinois law to develop our own jurisprudence. Compare *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997) ("Illinois courts have given little guidance as to how state due process protection differs from federal protection ***"). This is especially warranted when the Illinois Constitution contains an express provision with no express federal counterpart: the privacy clause (Ill. Const. 1970, art. I, § 6).

¶ 146       I agree that the circuit court's order must be vacated and this cause remanded for further proceedings.